927 P.2d 1129 (1996)
130 Wash.2d 747
The STATE of Washington, Respondent,
v.
Gregory CREDIFORD, Petitioner.
No. 63276-6.
Supreme Court of Washington, En Banc.
Argued January 31, 1996.
Decided December 12, 1996.
*1130 Washington Appellate Project, Darby Nicole Ducomb, Seattle, for petitioner.
David S. McEachran, Whatcom County Prosecutor, Anthony Parise, Deputy, Peter E. Meyers, Deputy, Seattle, for respondent.
*1131 ALEXANDER, Justice.
Gregory K. Crediford appeals his conviction on a charge of driving under the influence of intoxicating liquor. He challenges the constitutionality of the version of the driving under the influence statute that was in effect at the time he was cited. We reverse his conviction, holding that section (3) of that statute, which effectively imposes upon a defendant the burden of disproving an element of the offense by a preponderance of the evidence, violates Crediford's right to due process.
In the fall of 1993, Crediford was charged in Whatcom County District Court with driving a motor vehicle while under the influence of intoxicants, in violation of RCW 46.61.502. Before trial, Crediford challenged the constitutionality of the statute and moved to dismiss the charge, or in the alternative, to suppress the results of an alcohol concentration test that had been administered to Crediford by a Washington State Patrol trooper. The trial court denied his motions. The case then proceeded to a bench trial on stipulated facts, which are set forth in full, as follows:
(1) On October 21, 1993, defendant Gregory Crediford operated a motor vehicle in Whatcom County, Washington.
(2) Washington State Patrol Trooper Kenneth VanKooten had probable cause to arrest Crediford for driving while under the influence of alcohol.
(3) At 5:15 a.m., within two hours of the defendant's operation of a motor vehicle, the defendant had .16 percent by weight of alcohol in his blood as accurately analyzed in compliance with the laws of the State of Washington.
Br. of Resp't at App. B. Based solely on these facts, the trial court found Crediford guilty of the charged offense.
Crediford appealed his conviction to the Whatcom County Superior Court, which affirmed. He then filed a motion in the Court of Appeals, Division One, for discretionary review of the superior court's decision. The Court of Appeals certified the case to this court, and we accepted review.

I
Crediford first contends that the Legislature exceeded the police power of the State in enacting RCW 46.61.502. In that regard, he cites article I, section 1 of the Washington Constitution, which provides that "[a]ll political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights." We have previously held that, "[p]ursuant to [this provision,] the State Legislature may prescribe laws to promote the health, peace, safety, and general welfare of the people of Washington." State v. Brayman, 110 Wash.2d 183, 192-93, 751 P.2d 294 (1988).
"A legislative enactment is presumed constitutional and the party challenging it bears the burden of proving it unconstitutional beyond a reasonable doubt." Brayman, 110 Wash.2d at 193, 751 P.2d 294. A party asserting that a statute exceeds the State's police power must overcome the presumption that "it (1) tends to correct some evil or promote some interest of the State, and (2) bears a reasonable and substantial relationship to accomplishing its purpose." Brayman, 110 Wash.2d at 193, 751 P.2d 294 (citing State v. Conifer Enters., Inc., 82 Wash.2d 94, 96-97, 508 P.2d 149 (1973)).
At the time of Crediford's conviction, the challenged statute read, in relevant part, as follows:
(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:
(a) And the person has 0.10 grams or more of alcohol per two hundred ten liters of breath within two hours after driving, as shown by analysis of the person's breath made under RCW 46.61.506; or
(b) And the person has 0.10 percent or more by weight of alcohol in the person's blood within two hours after driving, as shown by analysis of the person's blood made under RCW 46.61.506[.] *1132 Former RCW 46.61.502 (effective July 25, 1993 through June 30, 1994).[1] In Crediford's view, RCW 46.61.502(1)(b) "does not bear a reasonable and substantial relationship to accomplishing its legitimate purpose because it punishes otherwise lawful behavior." Appellant's Opening Br. at 17.
As he did on appeal to the Whatcom County Superior Court, Crediford points to four scientific writings that discuss factors that may, according to the authors, inhibit the accurate measurement of the amount of alcohol in a person's blood.[2] He contends that because of these inherent difficulties, it is improbable that an alcohol concentration test administered within two hours after a person has been driving an automobile accurately indicates the amount of alcohol the driver had in his or her blood at the time of driving. Consequently, Crediford asserts that the challenged statute may punish persons whose blood alcohol concentration was less than 0.10 percent when they were driving. Such a law, he argues, "casts so wide a net in its attempt to criminalize driving while under the influence" that it "goes far beyond the means necessary to protect our streets ... drawing in innocent persons and criminalizing behavior not generally deemed criminal." Appellant's Opening Br. at 18, 17; see Appellant's Reply Br. at 9.
Crediford concedes, however, that it is well-recognized that the consumption of alcohol has an effect on a driver's ability to drive, and that the Legislature has a "substantial state interest in reducing the risk posed by intoxicated drivers." He notes also that this court has previously held that "laws which limit the consumption of alcohol by operators of motor vehicles are clearly within the province of the Legislature." Appellant's Opening Br. at 17 (citing State v. Franco, 96 Wash.2d 816, 824, 639 P.2d 1320 (1982)).
With the aforementioned principles and Crediford's concession in mind, it seems clear to us that the "evil" that the Legislature was intending to correct by enacting RCW 46.61.502(1) is "driving while under the influence of intoxicating liquor or any drug." (Emphasis added). Our conclusion that this was the Legislature's intent is buttressed by the fact that the statute containing the so-called "two-hour rule" is part of the motor vehicle code, is entitled "Driving under the influence," and contains a provision, which will be discussed at length below, providing an affirmative defense to a defendant who shows that he or she consumed a sufficient quantity of alcohol after driving so as to cause the alcohol concentration test to register 0.10 percent or greater. That being its intent, and because the Legislature is vested with "`[b]road discretion ... to determine what the public interest demands under particular circumstances, and what measures are necessary to secure and protect the same,'" Brayman, 110 Wash.2d at 193, 751 P.2d 294 (quoting Reesman v. State, 74 Wash.2d 646, 650, 445 P.2d 1004 (1968)), it was not irrational for the Legislature to attempt to accomplish its purpose by penalizing the excessive consumption of intoxicants associated with the operation of a motor vehicle. We are satisfied, therefore, that it was the Legislature's prerogative to determine that there is a relevant relationship between a driver's alcohol concentration of 0.10 percent or greater, as detected by an analysis of that person's breath or blood within two hours of driving, and the ability of that driver to have safely operated a motor vehicle within the *1133 previous two hours. Stated more directly, the Legislature did not exceed the police power of the State when it enacted a statute that essentially says that a person whose blood or breath alcohol concentration is 0.10 percent or greater should not have been driving an automobile within the previous two hours, regardless of what the driver's blood or breath alcohol concentration might have been at the time of driving.
It is equally clear to us, however, that the Legislature did not intend, by enacting this statute, to punish persons for the consumption of alcohol that was not associated with the operation of a motor vehicle. We say this despite the fact that a literal reading of RCW 46.61.502(1)(a) and (b) could lead a person to conclude otherwise. We are compelled to reach this conclusion because we are obliged to construe the statute in a way that is consistent with its underlying purpose and avoids constitutional deficiencies. See State ex rel. Faulk v. CSG Job Ctr., 117 Wash.2d 493, 500, 816 P.2d 725 (1991). See also In re Williams, 121 Wash.2d 655, 665, 853 P.2d 444 (1993) ("It is a general rule that statutes are construed to avoid constitutional difficulties when such construction is consistent with the purposes of the statute." (citing CSG Job Ctr., 117 Wash.2d at 500, 816 P.2d 725)).
In order to give effect to the Legislature's intentions, and, at the same time, avoid the constitutional defect that arises if the statute has an overly broad scope, we must, therefore, assume that a logically and legally required, albeit implied, element of the offense described in RCW 46.61.502 is that an amount of alcohol sufficient to cause a measurement of breath or blood of a defendant to register 0.10 percent or greater within two hours of driving was present in the defendant's system while he or she was driving. This implied element (a nexus between the concentration of alcohol revealed by a blood or breath test administered within two hours of driving and the amount of alcohol present in the driver's system when driving) mitigates Crediford's concern that the statute criminalizes behavior not generally deemed criminal. We say this because the nexus element limits the application of RCW 46.61.502 to persons who drive after or while consuming intoxicants in sufficient quantity that within two hours after driving they register a reading of 0.10 percent blood or breath alcohol concentration. Because the statute, as construed, criminalizes only this behavior, the statute's net is not cast so wide that it ensnares persons whose consumption of alcohol after driving causes, in whole or in part, that person's alcohol concentration to reach or exceed 0.10 percent within two hours of driving.
In sum, because it is beyond debate that the Legislature may legitimately adopt statutes that penalize drivers for using the public's highway and roads when they are impaired by the consumption of alcohol, we are satisfied that it did not exceed its authority under the police power of the State in making it an offense for a driver to have an amount of alcohol in his or her system while driving that registers as 0.10 percent of breath or blood within two hours after driving.[3]

II

A.
Crediford also claims that RCW 46.61.502 denies him due process of law, as *1134 guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. In that regard, he asserts that the statute relieves the State of its burden of proving that the concentration of alcohol within a driver's system, as measured within two hours after driving, reflects the existence of an alcohol concentration at the time of driving that was sufficient to have impaired that driver's ability to safely drive. More specifically, he argues that the statute creates an evidentiary presumption that impermissibly removes from the trier of fact's consideration the question of whether a person with a blood alcohol concentration of 0.10 percent or more within two hours of driving had the same or higher blood alcohol content at the time of driving. The State responds that this issue has been put to rest by the Brayman case in which we examined an earlier version of RCW 46.61.502, which was identical to the statute at issue here except for the "two-hour rule." In Brayman, we held that rather than creating a presumption, the statute simply defines the "per se [driving while under the influence of alcohol offense] in terms of breath alcohol" concentration. Brayman, 110 Wash.2d at 191, 751 P.2d 294.
We agree with the State that RCW 46.61.502 does not create an unconstitutional conclusive presumption, and reaffirm the rationale underlying our holding in State v. Brayman, supra, that a statute does not create an unconstitutional conclusive presumption unless it requires a trier of fact to presume from the State's proof of one fact some other fact that constitutes a necessary element of the crime. Brayman, 110 Wash.2d at 189-91, 751 P.2d 294. Here, the trier of fact is not required to presume one fact from another. Rather, RCW 46.61.502 simply defines the elements of a crime, and the trier of fact is asked to determine if the facts proving each of those elements of the crime are present.
The relevant offense, driving while under the influence of intoxicating liquor, is defined in the statute as being comprised of the following elements: (1) a vehicle was driven by the defendant, (2) upon a public road of this state, and (3) the concentration of alcohol in the defendant's system, as revealed by an analysis of the defendant's blood or breath, reached or exceeded 0.10 at any time within two hours after driving. Significantly, the driver's alcohol concentration level at the time of driving is not an element of the offense. Contrary to Crediford's contention, therefore, the statute does not require a jury to consider the relationship between the level of alcohol in the driver's system when he or she was driving and the time the alcohol concentration test was administered.[4] Consequently, we reject Crediford's assertion that RCW 46.61.502 requires the finder of fact to presume "that the person drove while having a blood alcohol content of 0.10 if the person had a blood alcohol content of 0.10 at any time within two hours of driving." Appellant's Opening Br. at 9.

B.
Our disposition of the issue of whether the statute creates an impermissible presumption does not, however, entirely resolve this appeal. In our view, the thorny issue that remains is one that Crediford raises by his assertion that "an accused person has no burden to disprove any element of the crime, and any attempt to create such a burden violates an individual's due process rights." Appellant's Opening Br. at 5 (emphasis added.) His assertion raises the question of whether RCW 46.61.502 violates the Due Process Clause of the United States Constitution in that the affirmative defense provided for in subsection (3) of that statute relieves *1135 the State of its obligation to prove, beyond a reasonable doubt, every element of the charged crime, including the implied element that the alcohol that was in the driver's system when he was operating his motor vehicle was sufficient to cause that driver's blood alcohol concentration to exceed 0.10 at the time of testing.
Subsection (3) of RCW 46.61.502 reads as follows:
(3) It is an affirmative defense to a violation of subsection (1)(a) of [RCW 46.61.502] which the defendant must prove by a preponderance of the evidence that the defendant consumed a sufficient quantity of alcohol after the time of driving and before the administration of an analysis of the person's breath or blood to cause the defendant's alcohol concentration to be 0.10 or more within two hours after driving.[[5]]
Although this portion of the statute indicates that it is a defense to the offense created in RCW 46.61.502 that the driver's blood alcohol concentration test results were affected by the consumption of alcohol between the time of driving and the time of the test, it places the burden on the defendant to establish the defense by a preponderance of evidence. This requirement flies in the face of the well-established principle that every person accused of a crime is constitutionally endowed with an overriding presumption of innocence, a presumption that extends to every element of the charged offense. Morissette v. United States, 342 U.S. 246, 275, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952); State v. McHenry, 88 Wash.2d 211, 558 P.2d 188 (1977). It also runs counter to the constitutional requirement that the prosecution must prove every element of its case beyond a reasonable doubt. In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); State v. Roberts, 88 Wash.2d 337, 340, 562 P.2d 1259 (1977). In our view, because RCW 46.61.502(3) requires a defendant to disprove a necessary element of the offense, thus effectively placing the burden on that defendant to prove his or her innocence, it is violative of the Due Process Clause of the United States Constitution.
Our ruling that RCW 46.61.502(3) is constitutionally infirm does not, however, affect the remaining provisions of RCW 46.61.502. Caritas Servs., Inc. v. Department of Social & Health Servs., 123 Wash.2d 391, 416-17, 869 P.2d 28 (1994) ("An act of the legislature is not unconstitutional in its entirety because one or more of its provisions is unconstitutional unless the invalid provisions are unseverable and it cannot reasonably be believed that the legislature would have passed the one without the other, or unless the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purposes.") (quoting State v. Anderson, 81 Wash.2d 234, 236, 501 P.2d 184 (1972)).[6]
Because "once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it," we must lastly determine whether (a) to remand the case so that Crediford may be retried for violating RCW 46.61.502, as that statute has been interpreted in this opinion, or (b) to apply the statute, absent the offending provision, to the stipulated facts to determine if the State proved all of the elements of the offense charged. State v. Darden, 99 Wash.2d 675, 679, 663 P.2d 1352 (1983) (quoting Johnson v. Morris, 87 Wash.2d 922, 927, 557 P.2d 1299 (1976)).
*1136 We choose to apply the statute ourselves for two reasons. First, because the trial was originally conducted on stipulated facts, this court is in the identical position as the trial court. Second, as we discuss below, the Double Jeopardy Clause of the United States Constitution "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." State v. Hennings, 100 Wash.2d 379, 383, 670 P.2d 256 (1983) (quoting Burks v. United States, 437 U.S. 1, 9, 98 S.Ct. 2141, 2146, 57 L.Ed.2d 1 (1978)).
Based on the sparse facts in the stipulation, it cannot be said that the State proved beyond a reasonable doubt that it was alcohol that was in Crediford's system when he operated his vehicle that caused the measurement of alcohol in his blood, taken within two hours after driving, to exceed 0.10 percent. As recited above, the stipulated facts indicate only that the officer "had probable cause" to arrest Crediford and that the officer obtained a reading of Crediford's blood alcohol level at .16 percent within two hours after Crediford had been driving. Significantly, the stipulation contains no information about whether the officer placed Crediford in custody under observation during that less than two-hour period. Based solely on the stipulation, we can say as a matter of law that the State failed to prove, beyond a reasonable doubt, that the concentration of alcohol in Crediford's blood, as measured within two hours of driving, was not affected by alcohol he consumed after he drove. Finally, because the Double Jeopardy Clause of the United States Constitution entitles a defendant to dismissal with prejudice where there is a failure of proof, it is so ordered. See Burks, 437 U.S. at 10-11, 98 S.Ct. at 2147; State v. Stanton, 68 Wash.App. 855, 867, 845 P.2d 1365 (1993).
Reversed.
DOLLIVER, SMITH and GUY, JJ., concur.
SANDERS, Justice (concurring).
I concur with the majority's holding that Crediford's conviction must be reversed. However, since the majority goes beyond what is necessary to decide the case by way of dicta, I write separately to state my divergent views.
I agree that the Legislature may, pursuant to its police powers, prohibit drunk driving. However, subsections (1)(a) and (b) of RCW 46.61.502, as construed by the majority, do not prohibit drunk driving. Instead subsections (1)(a) and (b) outlaw being drunk at the time of a test sometime after driving and make irrelevant the critical question: was the driver impaired when he was driving? Inconsistently, subsections 1(c) and (d) make it a crime to drive when under the influence, regardless of when, or even if, a test is performed. The relevant portion of this statute provides:
(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:
(a) And the person has 0.10 grams or more of alcohol per two hundred ten liters of breath within two hours after driving, as shown by analysis of the person's breath made under RCW 46.61.506; or
(b) And the person has 0.10 percent or more by weight of alcohol in the person's blood within two hours after driving, as shown by analysis of the person's blood made under RCW 46.61.506; or
(c) While the person is under the influence of or affected by intoxicating liquor or any drug; or
(d) While the person is under the combined influence of or affected by intoxicating liquor and any drug.
....
(3) It is an affirmative defense to a violation of subsection (1)(a) and (b) of this section which the defendant must prove by a preponderance of the evidence that the defendant consumed a sufficient quantity of alcohol after the time of driving and before the administration of an analysis of the person's breath or blood to cause the defendant's alcohol concentration to be 0.10 or more within two hours after driving.... *1137 RCW 46.61.502 (emphasis added) (amended by Laws of 1994, ch. 275, § 2).
The ultimate problem is that this statute: (1) is not rationally related to the State's legitimate purpose of curtailing drunk driving; (2) does not define the proscribed conduct with sufficient definiteness to avoid unconstitutional vagueness; (3) punishes both legal and illegal activity and is therefore unconstitutional for overbreadth; and (4) unconstitutionally relieves the prosecution of proving every element of the offense beyond a reasonable doubt.
The majority seems to operate under the influence of a driving desire to uphold this statute. In doing so, it rewrites the offense, strikes part of the statute, and then engrafts an additional element. Although this is a DUI statute, it is nevertheless a criminal statute and the same constitutional rules which we apply to every other criminal statute must equally apply here as well. This is not to say we should yield to the legitimate public passion to get drunks off the road at the expense of constitutional mandates.
The statute clearly is intended to proscribe driving while intoxicated. Its text reads "A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state...", RCW 46.61.502(1), and at least in part it criminalizes just thatsee RCW 46.61.502(1)(c) and (d). The purpose of this statute is to proscribe driving while under the influence of alcohol and/or drugs. The majority agrees: "[I]t seems clear to us that the `evil' that the Legislature was intending to correct by enacting RCW 46.61.502(1) is `driving while under the influence of intoxicating liquor or any drug.'" Majority op. at 1132.
However, because of the alleged practical evidentiary difficulty of establishing that the driver was under the influence while driving, the Legislature amended the statute to allow the State to show that the driver was under the influence at any time within two hours after driving, which it equates in criminal consequence with being under the influence while driving. The overall legislative intent was to proscribe driving while drunk, and this statute passed to make easy prosecutions even easier.[1] While the goal of making convictions easier to obtain may be good for prosecutors, it is not permissible if it short-circuits constitutional due process.
This year the deficiencies of an almost identical statute were summarized by the highest court of Pennsylvania in a unanimous opinion. Rather than revising the statute's text or ignoring its language, the court simply acknowledged its deficiencies and struck it down. Commonwealth v. Barud, 545 Pa. 297, 681 A.2d 162 (1996). I would adopt that approach because it is analytically correct. However, our majority chooses to politely disagree with the Barud case ("[W]e respectfully disagree with the Pennsylvania Supreme Court [in Barud]."). Majority op. at 1134 n. 4. I disagree on this point and would follow Barud because it is persuasive.
While the majority begins by noting that the Legislature intended to proscribe driving while drunk, it sustains parts of the statute which appear to make the drunkenness of the driver at the time of driving totally irrelevant. The majority reads the statutory text which unambiguously proscribes "driving while under the influence" (RCW 46.61.502(1)) but holds that the statute in fact means something quite different, i.e., being drunk at the exact time of the test if the test is administered within two hours of driving. Majority op. at 1133. If this is a correct reading of subsections 1(a) and (b), the majority renders irrelevant the only rational basis of the statute: prohibiting drunk driving. I disagree with the majority's construction of the statute and disagree that it is constitutional if the majority is right about the proper construction.
The majority's statutory construction violates nearly every canon of statutory interpretation. See In re Cross, 99 Wash.2d 373, 382, 662 P.2d 828 (1983) (statutes are to be interpreted in a manner consistent with their *1138 underlying purpose); see also State v. Stannard, 109 Wash.2d 29, 36, 742 P.2d 1244 (1987) (when interpreting a statute, absurd or strained results are to be avoided).

RCW 46.61.502 exceeds the Legislature's police power
The Legislature may enact a law pursuant to its so-called "police power" only if such law "(1) tends to correct some evil or promote some interest of the State, and (2) bears a reasonable and substantial relationship to accomplishing its purpose." State v. Brayman, 110 Wash.2d 183, 193, 751 P.2d 294 (1988). For example, in State v. Spino, 61 Wash.2d 246, 250, 377 P.2d 868 (1963) we struck down as unconstitutional a second degree arson statute which criminalized the burning of any building without requiring that the burning be intentionally harmful. We struck down the statute because it made possible the punishment of acts which bore no reasonable relation to the harm sought to be prevented, the intentional harmful burning of a building. Similarly, in City of Seattle v. Pullman, 82 Wash.2d 794, 800, 514 P.2d 1059 (1973) we struck down a statute outlawing loitering by minors as an unconstitutional use of the Legislature's police power because "it bears no real or substantial relationship to the proclaimed governmental interestthe protection of minors." This statute flunks the police power test in the same way.
If we believe the majority, the State's "interest" to be promoted is to curtail drunk driving. Majority op. at 1132. However, the text of RCW 46.61.502(1)(a) and (b) is construed to criminalize drunkenness at the time one takes the test, but not necessarily when one drives. In effect the statute was passed to cut off the logical and scientifically correct defense argument that the blood alcohol content in every person fluctuates within certain norms after consumption; for a short time it goes up, peaks, and then declines slowly. Except by sheer coincidence, the BAC reading while driving will always be different from any subsequent test result. But simply being drunk after driving is not a criminal act. See majority op. at 1132. However, postdriving drunkenness bears neither a substantial nor a necessary relationship to the accepted goal of prohibiting driving while drunk. Because the statute is not necessarily related to accomplishing its purpose, it exceeds the Legislature's police power and is unconstitutional.

RCW 46.61.502 is void for vagueness
Due process requires that citizens have fair warning of what activity is criminally prohibited so they may plan their activity accordingly and freely enjoy those activities which are not expressly illegal. Bouie v. City of Columbia, 378 U.S. 347, 350, 84 S.Ct. 1697, 1700-01, 12 L.Ed.2d 894 (1964). A criminal statute is void for vagueness if it fails to define the criminal activity with sufficient definiteness to apprise common citizens of what is a crime. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); Myrick v. Board of Pierce County Comm'rs, 102 Wash.2d 698, 707-08, 687 P.2d 1152 (1984) (statute requiring massage therapists to be "fully clothed" was void for vagueness because it failed to give fair warning of what manner of dress will run afoul of the law).
Under the majority interpretation of RCW 46.61.502, the statute is unconstitutionally vague because the average citizen cannot know what activity is illegal. Is it illegal to drive with a .00 BAC even if one's BAC may rise to a .10 two hours after driving? The same driver tested at roadside would be acquitted, whereas if he were tested later, he might be convicted. If he were never tested, the issue would be: was he, in fact, under the influence when driving? Subsections 1(c) and (d). The Pennsylvania Supreme Court held that an identical statute creates "significant confusion as to exactly what level of alcohol in the blood is prohibited" and does not provide the constitutionally required "reasonable standard by which an ordinary person may contemplate their future conduct." Barud, 681 A.2d at 166. Our statute is no better.

RCW 46.61.502 is unconstitutionally overbroad
A statute is overbroad if it sweeps so broadly that it punishes activity which is *1139 otherwise permissible. City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992). Also see generally Richard H. Fallon, Jr., Making Sense of Overbreadth, 100 Yale L.J. 853 (1990-1991). The overbreadth doctrine has been termed "strong medicine;" however, the elixir the majority applies does not cure this disease. O'Day v. King County, 109 Wash.2d 796, 804, 749 P.2d 142 (1988). Strong medicine is sometimes required to protect our constitutional rights. Activity which is not illegal may not be punished. Thus, by opening the door to punishment for being under the influence of alcohol after driving, the sweep of RCW 46.61.502 is overbroad. If the same person tested while driving or shortly after driving blew less than a 0.10, he would not have violated the statute, although if the police wait a sufficient time, the reading could increase and he would have violated the statute. But the facts are the same, only the time of testing has changed. See Barud, 681 A.2d at 166 ("[T]he statute sweeps unnecessarily broadly into activity which has not been declared unlawful in this Commonwealth, that is, operating a motor vehicle with a BAC below .10%.").

RCW 46.61.502 unconstitutionally relieves the State of proving an element of the crime
As the majority holds, RCW 46.61.502(3) unconstitutionally shifts the burden to the defendant to show that he consumed the alcohol after driving. Majority op. at 1135 (this shift of burden "flies in the face of the well-established principle that every person accused of a crime is constitutionally endowed with an overriding presumption of innocence ..."). The majority so holds because the statute relieves the State of proving "every element of its case beyond a reasonable doubt." Id. at 1135 (citations omitted).
I agree entirely and think that the majority is right on point. In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (state must prove every element beyond a reasonable doubt); State v. Lively, 130 Wash.2d 1, 11, 921 P.2d 1035 (1996). Every accused is endowed with an overriding presumption of innocence which extends to every element of the crime. Morissette v. United States, 342 U.S. 246, 275, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952); State v. McHenry, 88 Wash.2d 211, 558 P.2d 188 (1977). Any attempt to relieve the State of its burden to prove every element of the crime is a deprivation of the accused's liberty without due process of law. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); State v. Summers, 120 Wash.2d 801, 817, 846 P.2d 490 (1993).
However, the majority's remedy falls short. The majority's solution addresses only the element of whether the accused consumed the alcohol after driving. It still relieves the State of its burden to prove the quintessential element of a DUI case, namely that the driver was drunk while driving (by test or observation or both). The State is now allowed to get a conviction for driving while under the influence without proving that the accused was under the influence while driving. This violates due process and common sense.
In McLean v. Moran, 963 F.2d 1306, 1310 (9th Cir.1992), the United States Court of Appeals for the Ninth Circuit held a Nevada statute similar to RCW 46.61.502 unconstitutional because it allowed the state to prove its case by showing that the defendant had a particular BAC level at the time of testing after driving and then allowed a "conclusive presumption" that the accused's BAC level was the same at the time of testing as at the earlier time of driving. The Ninth Circuit reasoned:
Most experts agree that it ordinarily takes forty-five to ninety minutes to attain a peak BAC level on an empty stomach, and two to three hours if alcohol is consumed with or after a meal, while a few contend that the time lag between alcohol consumption and absorption into the blood stream is even longer.
McLean, 963 F.2d at 1309-10.
The Pennsylvania high court is in complete accord: "[T]he most glaring deficiency of § 3731(a)(5) is that the statute completely fails to require any proof that the accused's blood alcohol level actually exceeded the legal limit at the time of driving." Barud, 681 A.2d at 166. Our statute has the same deficiency. *1140 This statute is facially unconstitutional and I would so hold.
JOHNSON and MADSEN, JJ., concur.
DURHAM, Chief Justice (dissenting).
We were asked only to decide whether former RCW 46.61.502(1), which defines "driving while under the influence" in terms of a 0.10 alcohol level within two hours of driving, (1) created an impermissible conclusive presumption, or (2) was an invalid exercise of the police power. I concur in the majority's rejection of these arguments.
We were not asked to decide whether former RCW 46.61.502(3) impermissibly allocates the burden of proof to the defendant. Although I do not necessarily disagree with the majority's analysis of this issue, I believe the State has been ambushed by the majority's determination to decide the issue sua sponte under the stipulated facts. If Crediford had actually raised this issue in his motion to dismiss, the State would have had the opportunity to introduce evidence that Crediford was in custody and had no access to additional alcohol between his arrest and the administration of the alcohol test. Our disposition of this case should not penalize the State for agreeing in good faith to proceed with this appeal under stipulated facts.
TALMADGE, J., concurs.
NOTES
[1] This statute was amended during the 1994 Legislative session to read, in relevant part, as follows:

"(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:
"(a) And the person has, within two hours after driving, an alcohol concentration of 0.10 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506[.]" RCW 46.61.502 (as amended by Laws of 1994, ch. 275, § 2 (effective July 1, 1994)).
[2] See Clerk's Papers at 9-14 (referring to Kurt M. Dubowski, Ph.D., Absorption Distribution and Elimination of Alcohol: Highway Safety Aspects, J. of Stud. on Alcohol (Supp. 10 July 1985); A.W. Jones & A. Neri, Evaluation of Blood-Ethanol Profiles after Consumption of Alcohol Together with a Large Meal, 24 Canadian Soc'y Forensic Sci. J. No. 3 (1991); A.W. Jones, How Breathing Technique Can Influence the Results of Breath-Alcohol Analysis, 22 Med. Sci. Law No. 4 (1982); Rodney G. Gullberg, Differences between Roadside and Subsequent Evidential Breath Alcohol Results and Their Forensic Significance, 52 J. of Stud. on Alcohol No. 4 (July 1991)).
[3] Our ruling is consistent with rulings of courts in other states that have upheld statutes containing provisions that are similar to RCW 46.61.502(1)(a) and (b) against a variety of challenges. See State v. Martin, 174 Ariz. 118, 847 P.2d 619, 623 (Ct.App.1992) (noting that the Legislature concluded that a person with a blood alcohol concentration of .10 or greater within two hours after driving poses a danger to the public) (relying upon Cacavas v. Bowen, 168 Ariz. 114, 811 P.2d 366, 368 (Ct.App.1991)); Smith v. Charnes, 728 P.2d 1287 (Colo.1986); City of Mankato v. Chirpich, 392 N.W.2d 34, 37 (Minn. App.1986) (upholding Minnesota's "two-hour rule" as a valid exercise of the legislative authority to define the elements of a crime), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); State v. Howren, 312 N.C. 454, 323 S.E.2d 335, 338 (1984) ("The legislature may constitutionally make it a crime for persons to have an alcohol concentration of 0.10 or more at any relevant time after driving[.]"); City of Fargo v. Stensland, 492 N.W.2d 591, 594-95 (N.D.1992) ("The legislature could reasonably conclude that those who drive a vehicle with a blood-alcohol content that is .10% or greater, within two hours after relinquishing control of a vehicle, pose an unreasonable risk to public safety.").
[4] See Stensland, 492 N.W.2d at 594 ("The precise blood-alcohol content at the time of operation or control is not an element of the per se offense [of driving while under the influence of intoxicating liquor]."). See also Martin, 847 P.2d at 623; Cacavas, 811 P.2d at 368; Chirpich, 392 N.W.2d at 36 n. 1. Similarly, we respectfully disagree with the Pennsylvania Supreme Court insofar as it reasoned that "the most glaring [constitutional] deficiency" in that state's statute creating a "three-hour rule" that is analogous to the "two-hour rule" in RCW 46.61.502, was "that the statute completely fails to require any proof that the accused's blood alcohol level actually exceeded the legal limit [of 0.10 percent] at the time of driving." Commonwealth v. Barud, 545 Pa. 297, 681 A.2d 162, 166 (1996) (emphasis added).
[5] Although RCW 46.61.502 was amended by the Legislature between the time of the incident on October 21, 1993 for which Crediford was cited, and July 21, 1994, when the Whatcom County Superior Court affirmed the district court's ruling, subsection (3) of the statute remains, in substance, as it was worded at the time of his arrest. Compare Laws of 1994, ch. 275, § 2 (effective July 1, 1994) and Laws of 1993, ch. 328, § 1 (effective July 25, 1993).
[6] RCW 46.61.502(3) was first enacted by the Legislature as a section of Laws of 1993, ch. 328, which amended Laws of 1987, ch. 373. The earlier session law contained a severability clause which reads as follows: "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provisions to other persons or circumstances is not affected." Laws of 1987, ch. 373, § 8. "[A]bsent a contrary legislative intent in [an] amendment, an amendment to an act containing a severability clause is upon enactment covered by that clause." Caritas Servs., 123 Wash.2d at 417, 869 P.2d 28.
[1] One of the bill's sponsors, Senator Adam Smith, informed the Senate before passage that "This bill is going to be one the prosecutors wanted and will be helpful in some prosecutions on DWI offenses to deal with the blood alcohol test taken within two hours of the arrest is accurate for the time of arrest." Clerk's Papers (CP) at 27.