980 P.2d 725 (1999)
138 Wash.2d 486
STATE of Washington, Respondent,
v.
Ellsworth R. ROBBINS, Petitioner,
George T. Cooper, Defendant.
No. 66143-0.
Supreme Court of Washington, En Banc.
Argued September 10, 1998.
Decided July 15, 1999.
*726 Thomas Weaver, Port Orchard, for petitioner.
*727 Richard Weber, Okanogan County Prosecutor, Karen Calhoun-Wells, Deputy Aaron Walls, Deputy, Gregory Weber, Okanogan, for respondent.
ALEXANDER, J.
We granted review of Ellsworth R. Robbins' petition to review a decision of the Court of Appeals upholding the Okanogan County Superior Court's affirmance of Robbins' district court conviction on a charge of driving under the influence of alcohol (DUI). Robbins contends that the Court of Appeals erred in failing to recognize that in State v. Crediford, 130 Wash.2d 747, 927 P.2d 1129 (1996), this court "unanimously" declared that RCW 46.61.502(1)(a), the same statute under which he was charged in this case, was unconstitutional. He asserts, alternatively, that even if this court did not declare the statute unconstitutional in Crediford, we should either reconsider that decision and strike it down as violative of due process, or remand for a new trial because the trial court's jury instructions relieved the State of its burden of proving the "implied element" we recognized in Crediford to the effect that there must be a nexus between the results of a defendant's blood alcohol test and the defendant's blood alcohol level when actually driving. We affirm the Court of Appeals.

FACTS
Shortly before 3:00 a.m. on October 15, 1993, Deputy Rob Heyen, of the Okanogan Sheriff's Department, stopped a vehicle being driven by Ellsworth R. Robbins. Heyen did so because he believed that Robbins was exceeding the speed limit and had failed to signal a turn. Upon confronting Robbins, Heyen detected an odor of alcohol on Robbins' breath. In response to questioning by Heyen, Robbins admitted that he had consumed alcohol prior to driving. Following Robbins' failure to perform several field sobriety tests to Heyen's satisfaction, the deputy arrested Robbins for DUI. Heyen then transported Robbins to the Okanogan County Jail where he administered two Breathalyzer tests to him. The first test was administered 58 minutes after Robbins was stopped, and the second test followed two minutes later. The tests registered at 0.13 and 0.12 grams of alcohol per 210 liters of breath respectively. Following administration of these tests, Heyen issued Robbins a ticket for DUI in violation of RCW 46.61.502.
Prior to trial at the Okanogan County District Court, Robbins moved to suppress the results of the Breathalyzer tests. At the hearing on his motion, Robbins claimed that before being stopped by Heyen, he had been at the home of a friend where he had consumed a glass of beer mixed with whiskey. Robbins said that after consuming the alcohol he went to his car and started to drive to his home, which was located three blocks away from his friend's house. Robbins claimed that he had not felt the effects of the alcohol prior to being stopped by Heyen, but that he did feel the effects of it at the time the Breathalyzer tests were administered to him. The trial court denied Robbins' motion to suppress.
At trial, Heyen testified that Robbins was in his custody and under his observation from the time Robbins was stopped until Robbins performed the Breathalyzer tests and that during this time Heyen "did not observe any alcohol consumption by Mr. Robbins." Clerk's Papers (CP) at 217. Heyen said that 20 minutes before the first Breathalyzer test was administered Robbins conceded that "he had not consumed any alcohol since being stopped." CP at 217. Robbins' testimony at trial was consistent with the testimony he gave at the suppression hearing.
The trial court declined to give a jury instruction proposed by Robbins, which provided:
You may disregard the results of the test of the defendant's breath if you entertain a reasonable doubt as to the accuracy of the test and the results thereof.
One of your duties in this case is to determine what weight or importance is to be given to the breath test result testified to in this case. In doing so, you may consider any evidence presented in this case that relates to whether or not the defendant was under the influence of alcohol.

*728 In determining whether or not the breath test result was accurate you may consider the defendant's testimony concerning the number of drinks he consumed and the effects of alcohol upon him, the testimony of witnesses concerning the number of drinks consumed by the defendant and the effects of the alcohol upon the defendant, and you may consider the testimony of any expert witness.
CP at 154. Instead, it instructed the jury as follows:
To convict the defendant of driving under the influence of intoxicating liquor, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 15th day of October, 1993, the defendant drove a a(sic) motor vehicle;
(2)(a) That the person had .10 grams of alcohol per two hundred ten liters of breath within two hours of driving; or
(b) While the person was under the influence of or affected by intoxicating liquor.
(3) That the acts occurred in Okanogan County, Washington.
CP at 153.
The jury found Robbins guilty of DUI. Following sentencing, Robbins appealed his conviction to the Okanogan County Superior Court, which affirmed his conviction. Robbins then sought review in the Court of Appeals, Division Three. That court granted discretionary review and, following the issuance of our decision in Crediford, it affirmed Robbins' conviction. Robbins then petitioned this court for review and we granted it.[1] Robbins' primary contention here, as it was below, is that we have held or should hold that RCW 46.61.502 is unconstitutional, and that we should, therefore, reverse his conviction and dismiss the DUI charge.

I
Robbins first contends that in Crediford this court unanimously declared RCW 46.61.502 to be unconstitutional on the basis that it exceeds the legitimate scope of the Legislature's police power. Robbins overstates our holding in that case. In Crediford we simply concluded that subsection (3) of RCW 46.61.502, a provision which placed the burden on a defendant to prove an affirmative defense that his or her blood alcohol level was above the legal limit because of what he or she drank within two hours after driving, was unconstitutional.[2] We went on to conclude, however, that the remainder of the statute passed constitutional muster.[3]Crediford, 130 Wash.2d at 759-60, 927 P.2d 1129 ("Our ruling that RCW 46.61.502(3) is constitutionally infirm does not, however, affect the remaining provisions of RCW 46.61.502."). The charge against Robbins *729 was based solely on an allegation that he violated RCW 46.61.502 by driving under the influence of alcohol and/or drugs and, significantly, the trial court did not instruct the jury that the defendant had asserted an affirmative defense or that he had any burden of proof whatsoever. It is apparent, therefore, that the portion of RCW 46.61.502 that we declared unconstitutional in Crediford had no application to this case, and, therefore, was not given any force or effect.

II
Robbins contends alternatively, that we should reconsider our decision in Crediford and strike down RCW 46.61.502 in its entirety as violative of due process on the basis that the statute exceeds the Legislature's police power.[4] Robbins asserts that RCW 46.61.502 violates due process because the statute appears to proscribe legal behavior, i.e., drinking after driving.[5] He supports this assertion by claiming that the so-called "two-hour rule" found in RCW 46.61.502(1)(a) does not regulate intoxicated drivers, and thus fails to bear a substantial or necessary relationship to the goal of prohibiting drinking and driving. The State responds that RCW 46.61.502 "does not run afoul [of] the police power" because under Crediford "the burden is still on the State to disprove the defense" of drinking after driving. Br. in Resp. to Pet. at 7.
As we noted in Crediford, "[a] party asserting that a statute exceeds the State's police power must overcome the presumption that `it (1) tends to correct some evil or promote some interest of the State, and (2) bears a reasonable and substantial relationship to accomplishing its purpose.'" Crediford, 130 Wash.2d at 752, 927 P.2d 1129 (quoting State v. Brayman, 110 Wash.2d 183, 193, 751 P.2d 294 (1988)); see also State v. Conifer Enters., Inc., 82 Wash.2d 94, 96-97, 508 P.2d 149 (1973). We went on to indicate in Crediford that RCW 46.61.502 does "tend[ ] to correct some evil or promote some interest of the State" because it serves the laudable goal of discouraging drinking and driving. Crediford, 130 Wash.2d at 752, 927 P.2d 1129 (quoting Brayman, 110 Wash.2d at 193, 751 P.2d 294). Although we concluded that the statute, as enacted, was overbroad in that a literal reading of RCW 46.61.502(1)(a) and (b) could lead a person to conclude that the Legislature intended to punish persons for the consumption of alcohol that was not associated with the operation of a motor vehicle, we avoided the necessity of striking the statute down by assuming:
[T]hat a[n] ... implied[ ] element of ... RCW 46.61.502 is that an amount of alcohol sufficient to cause a measurement of breath or blood of a defendant to register 0.10 percent or greater within two hours of driving was present in the defendant's system while he or she was driving. This *730 implied element (a nexus between the concentration of alcohol revealed by a blood or breath test administered within two hours of driving and the amount of alcohol present in the driver's system when driving) mitigates Crediford's concern that the statute criminalizes behavior not generally deemed criminal.... [T]he nexus element limits ... RCW 46.61.502 to persons who drive after or while consuming intoxicants in sufficient quantity that within two hours after driving they register a reading of 0.10 percent blood or breath alcohol concentration.
Crediford, 130 Wash.2d at 755, 927 P.2d 1129.
When considering whether a challenged statute "bears a reasonable and substantial relationship to accomplishing its purpose," we are mindful that the Legislature possesses broad discretion in determining what are the appropriate measures to serve and protect the public interest. See Brayman, 110 Wash.2d at 193, 751 P.2d 294. Further, in regard to the Legislature's police power, this court has consistently held that:
[A]ll that is constitutionally required of the legislature is that a state of facts can reasonably be conceived to exist which would justify the legislation. If the courts can reasonably conceive of such a state of facts, they must presume that such facts actually did exist and that the statute being tested was passed with reference to them.
State v. Moore, 79 Wash.2d 51, 54, 483 P.2d 630 (1971) (quoting State v. Laitinen, 77 Wash.2d 130, 132-133, 459 P.2d 789 (1969)). As we observed in Crediford, RCW 46.61.502 comports with the constitutional requirements set forth in Moore:
[I]t was not irrational for the Legislature to attempt to accomplish its purpose by penalizing the excessive consumption of intoxicants associated with the operation of a motor vehicle.... [I]t was the Legislature's prerogative to determine that there is a relevant relationship between a driver's alcohol concentration of 0.10 percent or greater ... and the ability of that driver to have safely operated a motor vehicle within the previous two hours.
Crediford, 130 Wash.2d at 754, 927 P.2d 1129 (emphasis added).
In short, Robbins fails to convince us that we should abandon our recent decision in Crediford. See State v. Berlin, 133 Wash.2d 541, 547, 947 P.2d 700 (1997) ("Stare decisis requires a clear showing that an established rule is incorrect and harmful before it is abandoned."). Accordingly, we reject Robbins' contention that RCW 46.61.502 violates the Legislature's police power.

III
Finally, Robbins contends that if we conclude that RCW 46.61.502 is not unconstitutional, we should remand for a new trial because the jury was not properly instructed as to the "implied element" in RCW 46.61.502, which we recognized in Crediford. Robbins buttresses this argument by citing City of Seattle v. Norby, 88 Wash.App. 545, 555, 945 P.2d 269 (1997), in which the Court of Appeals, Division One, interpreted Crediford as standing for the proposition that the trial court's failure to instruct the jury in regard to the "implied element" is reversible error. Norby, 88 Wash.App. at 556-57, 945 P.2d 269. The State responds that "Norby should be overruled" on the basis that the Court of Appeals erroneously applied Crediford's "implied element" analysis. Br. in Resp. to Pet. at 4-5.
We are satisfied that the court in Norby was correct in recognizing that the State has the burden to show a connection "between the results of the blood or breath test, and the defendant's alcohol level at the time of driving." Norby, 88 Wash.App. at 552, 945 P.2d 269. That conclusion logically follows from our recognition in Crediford that: (1) a nexus between the concentration of alcohol revealed by a blood or breath test administered within two hours of driving and the amount of alcohol present in the driver's system when actually driving is an "implied element" of DUI; and (2) "the prosecution must prove every element of its case beyond a reasonable doubt." Crediford, 130 Wash.2d at 759, 927 P.2d 1129 (citations omitted). The court in Norby went too far, however, in concluding that the State must meet the burden of establishing the "implied *731 element" in every case. Regrettably, we did not make it clear, as we should have, that the State need not meet the burden in cases where the defendant has not asserted that what he or she had to drink after driving influenced the blood alcohol concentration (BAC) reading. We now clarify our decision in Crediford and expressly hold that the State has the burden to show the "implied element" of a connection between the results of a defendant's blood or breath test and his or her blood alcohol level at the time of driving only in cases where the defendant affirmatively asserts that he or she consumed alcohol after driving and that this caused the result of the blood or breath test to equal or exceed 0.10.
The approach we announce here is consistent with that which we have taken in instances where a defendant asserts an affirmative defense. For example, when a defendant makes a claim of self-defense, he or she must set forth sufficient facts to establish the possibility of self-defense before the burden of proof shifts to the State to establish beyond a reasonable doubt that the defendant did not act in self-defense. See State v. Walden, 131 Wash.2d 469, 473, 932 P.2d 1237 (1997) ("To be entitled to a jury instruction on self-defense, the defendant must produce some evidence demonstrating self-defense; however, once the defendant produces some evidence, the burden shifts to the prosecution to prove the absence of self-defense beyond a reasonable doubt."). Requiring the defendant to at least assert that his or her BAC was influenced by what he or she had to drink after driving is less than what is required to assert the affirmative defense of self-defense, but is logical and consistent with the rationale we have applied in such cases. Our view is a pragmatic one which recognizes that it makes no more sense for the court to require the State to prove the absence of significant drinking after driving when such drinking is not asserted than it does to require the State to prove that a defendant did not act in self-defense when the defendant makes no such claim.
Although we decided in Crediford that RCW 46.61.502(3), the portion of the statute that provided an affirmative defense of drinking after driving, was unconstitutional, our decision here does no violence to our ruling in that case. That is so because our decision in Crediford was predicated on a concern that the statute improperly placed the burden on defendants to prove an affirmative defense which negated an, albeit implied, element of the offensethat the defendant had sufficient alcohol in his system at the time of driving to register 0.10 or more on the BAC machine within two hours of driving. Our decision here simply recognizes that drinking after driving is not presumed in every case and it keeps faith with Crediford because it requires the State to overcome the assertion, by proof beyond a reasonable doubt, that such drinking occurred. To relieve the State of that burden when there is no such assertion merely reflects a reasonable view that if a driver has not consumed alcohol after driving, the BAC test result will only indicate the level of alcohol in the driver's system at the time of driving.
In sum, we hold that when a defendant affirmatively alleges that what he or she drank after having driven significantly influenced their BAC score, the State must assume its burden of proving that the defendant did not drink after driving or that their BAC was not influenced by what he or she drank after driving. The State does not, however, bear such a burden until the defendant raises this issue. To the extent that Norby diverges from our holding in Crediford, it is overruled.
Looking at the facts of the case, in light of what we have stated above, it is undisputed that Robbins did not assert that he consumed alcohol following his arrest. Furthermore, there was no evidence that he did so. Indeed, all of the evidence was to the contrary. Because Robbins did not assert this defense, the State should not have the burden to disprove it. The trial court's failure to instruct the jury in regard to RCW 46.61.502's "implied element" was, therefore, not erroneous.

CONCLUSION
We reaffirm our holding in Crediford that RCW 46.61.502 is constitutional, with the exception *732 of subsection (3), and that the statute is a legitimate exercise of the Legislature's police power. In addition, we overrule City of Seattle v. Norby, 88 Wash.App. 545, 945 P.2d 269 (1997) to the extent that it holds that the State has the burden to establish a nexus between the concentration of alcohol revealed by a blood or breath test administered within two hours of driving and the amount of alcohol present in the defendant's system when driving in cases where the defendant has not asserted that what he or she drank after driving significantly influenced their BAC score. Accordingly, we reject Robbins' argument that this court should remand for a new trial on the basis that the trial court failed to properly instruct the jury as to the "implied element" in RCW 46.61.502 that we recognized in Crediford.
Affirmed.
GUY, C.J., DURHAM, SMITH, TALMADGE, JJ., and DOLLIVER, J.P.T., concur.
MADSEN, J. (dissenting)
In State v. Crediford, this court held that the relationship between a defendant's alcohol level within two hours of driving and the consumption of alcohol prior to driving is an element of the crime of driving under the influence of alcohol (DUI) which must be proved by the State. State v. Crediford, 130 Wash.2d 747, 927 P.2d 1129 (1996). The majority now abandons sub silentio, its analysis in Crediford and relieves the State from its burden of proving the very element it recognized in Crediford. In other words, what this court gave with one hand in Crediford it now takes back with the other. I respectfully dissent.
The DUI statute says a person is guilty of the offense if he drives a vehicle while under the influence of alcohol or drugs or if, within two hours after driving, he has an alcohol concentration of .10 percent or higher in his breath or blood. Former RCW 46.61.502(1)(a). The statute also says it is an affirmative defense to a prosecution for this second form of the offense if the defendant proves by a preponderance of the evidence that he consumed a sufficient quantity of alcohol after driving and before the test to cause an alcohol concentration of above .10 percent. Former RCW 46.61.502(3). The plurality in Crediford felt the Legislature would not have intended "to punish persons for the consumption of alcohol that was not associated with the operation of a motor vehicle." Crediford, 130 Wash.2d at 755, 927 P.2d 1129. In order to give effect to the Legislature's perceived intent and avoid possible constitutional problems, the plurality said it had to interpret RCW 46.61.502 to include a "legally required, albeit implied, element" that the defendant had a sufficient quantity of alcohol in his system while driving to result in a breath or blood alcohol concentration of .10 or higher within two hours after driving. Crediford, 130 Wash.2d at 755, 927 P.2d 1129. The plurality also concluded that the statutory affirmative defense unconstitutionally relieved the State of its burden of proving every element of the crime (specifically, the implied element). Id. at 759, 927 P.2d 1129.
The defendant in Crediford had been convicted in a bench trial on stipulated facts, so neither the elements of the crime nor the statutory affirmative defense had been incorporated in jury instructions. Thus, the question was not whether an instructional error was harmless, but how the constitutional defect in the statute affected Crediford's bench trial. The plurality found the stipulated facts insufficient to prove the defendant's.16 reading was caused by alcohol consumed before driving, and thus concluded that a new trial would be barred by double jeopardy. Id. at 760-61, 927 P.2d 1129.
Robbins had a jury trial. Based on Crediford, his attorney proposed a "to convict" instruction which would have required the State to prove that, while Robbins was driving, he either had a breath alcohol concentration of .10 percent or higher or was actually impaired by alcohol. The trial court instead gave an instruction that required the State to prove Robbins had an alcohol concentration of .10 percent or higher in his breath within two hours of driving.
Today, the majority opinion holds that the State need only prove the "implied element" described in Crediford if the defendant affirmatively *733 asserts that he or she consumed alcohol after driving which resulted in a breath test of .10 or higher. Majority at 730. The opinion analogizes to self-defense, which becomes an issue only if the defendant raises it. Majority at 731.
Admittedly, self-defense need be disproved only if the defendant presents some evidence he acted in self-defense. But that is a defense. The reason the State must disprove it is that it negates the intent element of the crime. State v. McCullum, 98 Wash.2d 484, 494-96, 656 P.2d 1064 (1983).[1] The State must prove the intent element in every case, whether or not the defendant claims lack of intent of raises any other defense. Because Robbins' proposed instruction was not given, the State was not required to prove, nor was Robbins' jury required to find, any relationship between his alcohol level within two hours of driving and his consumption of alcohol before driving. Although this relationship was implied based on perceived Legislative intent, it is an element of the crime, like drinking or driving (or intent), not an affirmative defense. Because this is an element of the crime, the State must prove it in every case, just like any other element.
This court has repeatedly held that "nonstatutory" (i.e., "implied") elements of crimes must be included in the information, just the same as statutory elements. E.g., State v. Moavenzadeh, 135 Wash.2d 359, 362, 956 P.2d 1097 (1998) (citing other cases). This court has also reversed convictions because a nonstatutory element was omitted from the jury instructions. State v. MacMaster, 113 Wash.2d 226, 231, 778 P.2d 1037 (1989) (omission of causation element in vehicular homicide case).[2] This court has also held that omission of an element of a crime from a "to convict" instruction is per se reversible. E.g., State v. Smith, 131 Wash.2d 258, 265, 930 P.2d 917 (1997). Because the nonstatutory element recognized by this court in State v. Crediford was omitted from the "to convict" instruction, the conviction in this case must be reversed and the matter remanded for a new trial.
SANDERS, J. (dissenting)
While the majority purports to "reaffirm our holding in Crediford that RCW 46.61.502 is constitutional," Majority at 731, Crediford actually held shifting the burden to the defendant to disprove "an element of the offense by a preponderance of the evidence[ ] violates Crediford's right to due process." State v. Crediford, 130 Wash.2d 747, 750, 927 P.2d 1129 (1996). Although the precise issue raised here was not necessary to determine in Crediford,[1] I adhere to my previously stated view that the two hour rule is as destructive to our constitutional rights as it is helpful to convict innocent persons. Crediford, 130 Wash.2d at 762-63, 927 P.2d 1129 (Sanders, J., concurring).

Statute Exceeds State's Legitimate Police Power
A statute is a valid exercise of the police power if it: (1) corrects or protects against some evil; and (2) bears a reasonable and substantial relationship to accomplishing its purpose. See State v. Brayman, 110 Wash.2d 183, 193, 751 P.2d 294 (1988).
The evil here is drunk driving, which is what the statute was designed to prevent. Crediford, 130 Wash.2d at 754, 927 P.2d 1129. However the subsections at issue do not necessarily *734 promote this legitimate purpose. The statute provides:
(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:
(a) And the person has 0.10 grams or more of alcohol per two hundred ten liters of breath within two hours after driving, as shown by analysis of the person's breath made under RCW 46.61.506; or
(b) And the person has 0.10 grams or more by weight of alcohol in the person's blood within two hours after driving, as shown by analysis of the person's blood made under RCW 46.61.506; or
(c) While the person is under the influence of or affected by intoxicating liquor or any drug; or
(d) While the person is under the combined influence of or affected by intoxicating liquor and any drug.
Former RCW 46.61.502 (1994) (emphasis added).[2] The obvious purpose of the statute is to make it a crime to drive while under the influence of alcohol or drugs, not reinstate prohibition. Subsections (c)-(d) of the statute bear a substantial relationship to the accomplishment of this purpose by prohibiting operation of a vehicle while under the influence of intoxicating liquor and/or any drug. Subsections (a)-(b), however, criminalize postdriving intoxication without regard to scientific principles of absorption by which the level of intoxication-while-driving may be determined.[3] Subsections (a)-(b) therefore do not bear the necessary substantial relationship to the statute's purpose to be a valid exercise of the police power.
This court examined an analogous statute in City of Seattle v. Pullman, 82 Wash.2d 794, 514 P.2d 1059 (1973). There a Seattle ordinance banned loitering by those under the age of 18 after 10:00 p.m. We held the ordinance exceeded the scope of the police power of the state because it failed to distinguish between harmful and harmless behavior. We recognized that the state had a legitimate interest to promote the well-being of minors but held that a curfew did not reasonably relate to that interest and therefore violated legally protected rights. Likewise, subsections (a)-(b) of this statute criminalize persons with a postdriving breath or blood alcohol concentration (BAC) over 0.10, but do not reasonably promote the state interest involvedprohibiting driving with a BAC of 0.10 percent or greater.
In another similar case we struck down an arson statute which banned willful burning of property, finding it exceeded the police power for want of distinction between harmful arson and the election of owner to incinerate his own worthless property. State v. Spino, 61 Wash.2d 246, 250, 377 P.2d 868 (1963).
Legislative history demonstrates the real motive behind subsections (a)-(b) of the statute is not to prohibit drunk driving but to more easily obtain convictions. See Crediford, 130 Wash.2d at 764 n. 1, 927 P.2d 1129 (Sanders, J., concurring) (quoting from one of statute's legislative sponsors that bill is one prosecutors wanted and would be helpful in some prosecutions for drunk driving). However postdriving drunkenness does not bear a substantial or necessary relationship to the legitimate state goal of banning drunk driving unless driving while impaired is an element of the crime. Unfortunately this element is omitted in subsections (a)-(b). See also Commonwealth v. Barud, 545 Pa. 297, 681 A.2d 162, 167 (1996) (statute identical to Washington's unconstitutional as it "precludes the admission of competent evidence that an accused's BAC was actually below the legal limit at the time of driving.").

Vagueness
A statute may also be constitutionally infirm if it is so vague it fails to define the *735 criminal activity with sufficient definiteness to forewarn a citizen of the conduct which is deemed criminal. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). We have held, for example, that a statute requiring massage therapists to be "`fully clothed'" was void for vagueness because it failed to give fair warning what manner of dress is unlawful. Myrick v. Pierce County Comm'rs, 102 Wash.2d 698, 707-08, 677 P.2d 140, 687 P.2d 1152 (1984).
While RCW 46.61.502 makes clear what level of alcohol exceeds the lawful limit at the time of the postdriving blood or breath test, it does not tell us, and it is impossible to know, what level of alcohol while driving is prohibited since one cannot know in advance if or when a test will be administered. This is necessarily so because the BAC at the time of the test is a function of not only the amount consumed but also the time of the test, to account for absorption, or lack thereof, into the bloodstream. The Pennsylvania Supreme Court concluded a nearly identical statute did not provide a reasonable standard by which an ordinary person could determine what was legal or illegal activity, since a person cannot know when his alcohol level would exceed 0.10 percent at the uncertain time of the postdriving test. Barud, 681 A.2d at 166. The Delaware Supreme Court held a statute nearly identical to Washington's void as such vagueness "encourages arbitrary enforcement." State v. Baker, 720 A.2d 1139, 1149 (1998).

Overbroad
A statute is unconstitutionally overbroad if it punishes activity which is otherwise permissible. City of Tacoma v. Luvene, 118 Wash.2d 826, 839, 827 P.2d 1374 (1992). Here the statute specifically criminalizes what is otherwise legalintoxication while not driving. See Barud, 681 A.2d at 166 (statute allowing for conviction based on postdriving BAC tests unconstitutional as it "sweeps unnecessarily broadly into activity which has not been declared unlawful....").
The majority acknowledges that a "literal reading" of the statute in question reveals exactly the flaws outlined, Majority at 729-730; however, the majority rationalizes its decision by relying upon dicta which invented an "`implied element'" of RCW 46.61.502 requiring a "`nexus'" between alcohol consumed prior to driving and the BAC tested up to two hours after driving. Majority at 730 (quoting State v. Crediford, 130 Wash.2d 747, 755, 927 P.2d 1129 (1996)).[4] However, while such a nexus may be present in this case, the nexus we lack is the one between the test results and the level of intoxication while driving exactly the nexus which this statute omits.
As held by the Delaware Supreme Court, the problem with a law such as ours is that it fails to account for the rate of alcohol absorption after drinking. It catches within its net those whose BAC is below the legally proscribed level while driving, but whose BAC rises above it afterward. Baker, 720 A.2d at 1147. It therefore omits the legally necessary, and reasonable, nexus to the state's legitimate interest.
New York's highest court supplied the correct nexus in People v. Mertz, 68 N.Y.2d 136, 497 N.E.2d 657, 506 N.Y.S.2d 290 (1986). There the court upheld a statute that criminalized drunk driving based on a blood test taken within two hours of driving, 497 N.E.2d at 660, 506 N.Y.S.2d 290, but only by construing the statute to require that while a reading of 0.10 percent or more on a postdriving blood test might establish a prima facie violation of the statute, the defendant may nonetheless present evidence in defense that his BAC while driving was below 0.10. Id. at 658, 506 N.Y.S.2d 290. Thus, the New York court rejected an interpretation much like the majority's that would have criminalized driving based solely on the test results as such ignores the "scientifically accepted *736 fact that a .10 reading within two hours after operation does not establish a .10 reading while operating and, in effect, [rewrites] the statute." Id. at 661, 506 N.Y.S.2d 290. See also McLean v. Moran, 963 F.2d 1306, 1310 (9 th Cir.1992) (where prosecution rests entirely on statutory presumption that postdriving BAC is not less than BAC at time of driving, the correlation between one's, BAC at the time of arrest and the time of the test may fail "`beyond a reasonable doubt' standard").[5]

Conclusion
The evil of drunk driving may be great, but the cure is to stop drunks from driving, not convict the innocent. This statute is more than a triumph of form over substance: it is a triumph of prosecution over innocence. I dissent.
JOHNSON, J., concurs.
NOTES
[1] The Court of Appeals consolidated the case of State v. Cooper, No. 14580-8-III, 1997 WL 668949 (Wash.Ct.App. Oct.28, 1997) with this case. See State v. Robbins, No. 14579-4-III, 1997 WL 668949 (Wash.Ct.App. Oct.28, 1997). However, the Court of Appeals reversed appellant Cooper's conviction, and the State did not seek review of that determination.
[2] RCW 46.61.502(3) provided that:

"It is an affirmative defense to a violation of subsection (1)(a) of this section which the defendant must prove by a preponderance of the evidence that the defendant consumed a sufficient quantity of alcohol after the time of driving and before the administration of an analysis of the person's breath or blood to cause the defendant's alcohol concentration to be 0.10 or more within two hours after driving. The court shall not admit evidence of this defense unless the defendant notifies the prosecution prior to the omnibus or pretrial hearing in the case of the defendant's intent to assert the affirmative defense."
[3] Any confusion as to what the majority held in Crediford may be due to the fact that there was a concurring opinion and a dissenting opinion filed in that case, and neither the majority opinion nor the other two opinions had five or more signatures. A close reading of the opinions reveals that the majority (Alexander, Dolliver, Smith, and Guy, JJ.) held that while RCW 46.61.502(3) was constitutionally infirm, the remainder of the statute was constitutional. The dissent, authored by Chief Justice Durham and joined by Justice Talmadge, expressed agreement with the majority's rejection of the defendant's claims that RCW 46.61.502(1) "created an impermissible conclusive presumption, or ... was an invalid exercise of the police power," but that the dissent was prompted by the dissenters' belief that the issue of the constitutionality of RCW 46.61.502(3) was not before the court. Crediford, 130 Wash.2d at 769, 927 P.2d 1129 (Durham, C.J., dissenting).
[4] In his dissent, Justice Sanders raises the additional assertion that RCW 46.61.502 is unconstitutionally vague. See Dissenting op. at 734-735. Robbins did not raise this issue in his petition for review and, therefore, we decline to address it. See RAP 13.7(b) (stating that "the Supreme Court will review only the questions raised in the motion for discretionary review"); Ravenscroft v. Washington Water Power Co., 136 Wash.2d 911, 928 n. 6, 969 P.2d 75 (1998) (stating that the "Supreme Court will review only the questions raised in the petition for review and the answer").
[5] At the time material to this case RCW 46.61.502(1) provided that:

"(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:
"(a) And the person has 0.10 grams or more of alcohol per two hundred ten liters of breath within two hours after driving, as shown by analysis of the person's breath made under RCW 46.61.506; or
"(b) And the person has 0.10 percent or more by weight of alcohol in the person's blood within two hours after driving, as shown by analysis of the person's blood made under RCW 46.61.506; or
"(c) While the person is under the influence of or affected by intoxicating liquor or any drug; or
"(d) While the person is under the combined influence of or affected by intoxicating liquor and any drug." Laws of 1993, ch. 328, § 1 (codified at RCW 46.61.502). The Legislature subsequently amended RCW 46.61.502(1) to combine paragraphs (a) and (b) into one paragraph (a), but the substance of the law remained basically unchanged. See Laws of 1994, ch. 275, § 2. The Legislature amended RCW 46.61.502 again in 1998 to provide in subsection(1)(a) that an alcohol concentration of 0.08 is sufficient for conviction. See Laws of 1998, ch. 213, § 3. The amendment became effective on January 1, 1999.
[1] That is why this court found the DUI affirmative defense unconstitutional in State v. Crediford, 130 Wash.2d 747, 927 P.2d 1129 (1996).
[2] The Legislature responded to MacMaster by amending the statute to omit that element. See State v. Rivas, 126 Wash.2d 443, 896 P.2d 57 (1995); State v. Salas, 127 Wash.2d 173, 897 P.2d 1246 (1995).
[1] In 1996, seven justices of this court reversed a conviction for drunk driving based on their conclusion that one section of Washington's driving under the influence (DUI) statute was unconstitutional. State v. Crediford, 130 Wash.2d 747, 759-60, 927 P.2d 1129 (1996). Six justices, however, chose to opine on their assumption that the balance of the statute was constitutionally valid, id., when there was no need to do so. Such opining is not precedent, but only dicta. See, e.g., Pedersen v. Klinkert, 56 Wash.2d 313, 317, 352 P.2d 1025 (1960). Therefore, contrary to the majority's assertion that Robbins needed to "convince us that we should abandon our recent decision in Crediford," Majority at 730, the only thing we need do is determine whether the remainder of the statute, which is what Robbins challenges, does indeed pass constitutional muster.
[2] The applicable statute has been subsequently amended to combine paragraphs (a) and (b) into one paragraph (a), and the alcohol concentration has been lowered to 0.08. However, the law remains substantially the same. RCW 46.61.502(1).
[3] See E. John Wherry, Jr., The Rush to Convict DWI Offenders: The Unintended Unconstitutional Consequences, 19 U. Dayton L.Rev. 429, 438 (1994) (in prosecutions based only on tests of driver's alcohol content, "Intoxication is not at issue....The ability to operate a motor vehicle is irrelevant....").
[4] By creating an element of a crime that is not in the statute, the majority ignores "this court's long history of restraint in compensating for legislative omissions.... Courts do not amend statutes by judicial construction, nor rewrite statutes `to avoid difficulties in construing and applying them.'" Millay v. Cam, 135 Wash.2d 193, 203, 955 P.2d 791 (1998) (citations omitted) (quoting Applied Indus. Materials Corp. v. Melton, 74 Wash.App. 73, 872 P.2d 87 (1994)). See also Spino, 61 Wash.2d at 249-50, 377 P.2d 868 (refusing to rewrite statute which exceeded state's police power by prohibiting willful burning to instead prohibit malicious burning as "rules of statutory construction can be used only to ascertain the meaning of a statute and not to modify it.").
[5] A detailed explanation of the alcohol absorption process may be found in Jennifer L. Pariser, In Vino Veritas: The Truth About Blood Alcohol Presumptions in State Drunk Driving Law, 64 N.Y.U. L.Rev. 141, 145-53 (1989). See also McLean v. Moran, 963 F.2d 1306, 1309-10 (9 th Cir.1992) ("Most experts agree that it ordinarily takes forty-five to ninety minutes to attain a peak BAC level on an empty stomach, and two to three hours if alcohol is consumed with or after a meal...."); People v. Mertz, 68 N.Y.2d 136, 497 N.E.2d 657, 660, 506 N.Y.S.2d 290 (1986) (listing cases, treatises, law review articles, and science journal reports).